**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Regis ROSARIO and Augusto DeJesus Estrada, Defendants–Appellants.**

Nos. 91–2627, 91–2661.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1992.

Decided May 11, 1992.

As Amended May 12, 1992.

*rical & Gynecological Associates of Neenah, S.C. v. Landig*, 129 Wis.2d 362, 384 N.W.2d 719 (App. 1986).

Rodney Cubbie (argued), Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Anthony Pinelli (argued), Chicago, Ill., Michael T. Norris, and Leon E. Dubinski, Schaumburg, Ill., for defendants-appellants.

Before CUMMINGS and POSNER, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Regis Rosario and Augusto DeJesus Estrada appeal the district court's denial of a motion to quash their arrests, to suppress evidence seized by police officers during the arrests, and to suppress statements made by the defendants. We affirm.

## I. BACKGROUND

During the early morning hours of August 18, 1990, a perceptible odor of marijuana wafted out of Room 315 at an Exel Inn in Glendale, Wisconsin. Recognizing this smell, a motel security guard alerted the Glendale Police Department, which dispatched four uniformed law officers to investigate. After meeting briefly with the

guard, they checked motel records and determined that Room 315 was registered to one Augusto Estrada. A computer check on Estrada's Illinois driver's license revealed him to be 46 years of age.

All four officers proceeded to Room 315. Officer Daniel Herlache knocked three or four times on the door. Seconds later, a male with Hispanic features, who appeared to be from his mid-twenties to thirty years of age, opened the door about two or three feet. Herlache told the man in the doorway—later identified as Rubin Vilaro [1]—that the officers were responding to the reported odor of burning marijuana emanating from the room. The officer then requested permission to enter the room. Whether Vilaro actually said "okay" in response remains a disputed question of fact, but two policemen testified that Vilaro did in quick succession gesture for the officers to enter Room 315, open the door fully, and then step back to allow them in.

Once inside the room, the officers saw Rosario and Estrada seated at a table. On the table in plain view were a rolled five-dollar bill and a white powdery substance resembling cocaine, which analysis later proved it to be. The officers repeated that they were responding to a report of someone smoking marijuana in the room. In response, Rosario explained, "We just got done smoking a joint and we don't have any left." Appellee's Brief, filed Dec. 9, 1991, at 6.

At this point, Herlache requested identification and Estrada complied. Herlache then asked permission to search the room, and Estrada nodded in agreement. During this time, Officer Steven O'Neil [2] conducted a pat-down search of Rosario, whose pockets bulged noticeably. The pat-down and a further search of Rosario's person produced an inhaler containing a white powdery substance lodged at its tip, as well as additional quantities of a matter appearing to be cocaine. Sergeant Dennis Wright, meanwhile, discovered in a dresser drawer both a digital scale and more of the cocaine-like substance.

The officers placed Estrada and Rosario under arrest and transported them to the police department. The next day, after being read the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), both Rosario and Estrada provided statements to the police. Officers Herlache and O'Neil testified that the interviews were conducted entirely in English, in which both men demonstrated their conversance.

Following the indictments of Rosario and Estrada [3], an attorney representing both defendants filed a motion to quash the arrest, suppress evidence, and suppress statements. After an evidentiary hearing, Magistrate Judge Bittner recommended to Judge Stadtmueller that the motions be denied. The judge entered a written decision and order denying the defendants' motion. Both defendants later entered conditional pleas of guilty, preserving their rights under Rule 11(a)(2) of the Federal Rules of Criminal Procedure to appeal the denial of the motion. The defendants each filed timely notices of appeal.

## II. ANALYSIS

The only issue in this case is whether the warrantless entry into Room 315 by law enforcement officers violated the Fourth Amendment. If so, the appellants contend, then the evidence seized by the police, the arrests, and the statements made by the appellants prior to and after the search were tainted. Because Vilaro had authority to consent to the entry of the police into

1. While the briefs, magistrate judge's recommendation, and district court ruling refer to "Ruben Vilario", the transcript refers to "Rubin Vilaro." Transcript of Evidentiary Hearing, Oct. 24, 1990, at 14.

2. This is how his name appears in the transcript of the evidentiary hearing. Tr. at 101. The briefs, magistrate judge's recommendation, and district court decision vary the spelling.

3. A federal grand jury sitting in the Eastern District of Wisconsin indicted the defendants-appellants on one count of conspiracy to possess with intent to distribute cocaine (a violation of 21 U.S.C. § 841(a)(1), § 846, and 18 U.S.C. § 2) and one count of possession of cocaine with intent to deliver (a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2).

the room and did so freely, however, the search, arrest, and seizure of evidence were valid. The district court's decision to deny the motion to suppress the evidence and statements therefore is affirmed.

■ A well-established standard of review requires this court to give particular deference to the district court's denial of such a motion unless the decision rendered was clearly erroneous. *United States v. Sewell*, 942 F.2d 1209, 1211 (7th Cir.1991), certiorari denied, ── U.S. ──, 112 S.Ct. 1567, 118 L.Ed.2d 213 (1992); *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir.1990), certiorari denied, ── U.S. ──, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991). A finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *United States v. D'Antoni*, 856 F.2d 975, 978 (7th Cir.1988) (citation omitted).

■ A warrantless entry of a home for the purpose of making an arrest or conducting a search ordinarily violates the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The Fourth Amendment's prohibition against unreasonable searches and unreasonable seizures extends beyond "the four walls of the home," *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 to protect the legitimate privacy expectations of the occupant of a hotel or motel. *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); *United States v. Diaz*, 814 F.2d 454, 458 (7th Cir.1987), certiorari denied, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987).

■ An exception to the general rule forbidding warrantless invasion, however, permits authorities conducting a search to enter a dwelling without a warrant if they obtain voluntary consent either from the individual whose property is to be searched, *Schneckloth v. Bustamonte*, 412

U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), or from a third party possessing common authority or joint control over the premises. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. The government bears the burden of proving by a preponderance of the evidence that the consenting third party possessed such authority. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990).

A. The police reasonably relied on Vilaro's apparent authority.

■ The appellants contend that Vilaro lacked both actual and apparent authority to consent to the search of Room 315. Fourth Amendment jurisprudence, however, does not require a third party to possess actual authority in order to consent to a request to enter premises. Moreover, the record fails to support the appellants' conclusion that Vilaro did not exercise apparent authority over the hotel room.

■ When individuals possessing common authority over an area agree to permit an entry or search, their consent " 'is valid as against the absent, nonconsenting person with whom that authority is shared.' " *United States v. Duran*, 957 F.2d 499, 503 (7th Cir.1992) (quoting *Matlock*, 415 U.S. at 170, 94 S.Ct. at 993). In *Matlock*, the Supreme Court explained that common authority "rests ... on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7.

In *Rodriguez, supra*, the Court decided an issue it had expressly reserved in *Matlock*, namely whether apparent authority provides a sufficient basis for consent. The Court affirmed the constitutionality of a warrantless entry consented to by a third party whom the police, at the time of the search, reasonably believed to have common authority over the premises, even though the individual in fact did not possess such authority.

The district court in the instant case correctly based its judgment on the issue of apparent authority. As this court stated in

*United States v. Klotz,* 943 F.2d 707 (7th Cir.1991): "Either actual or apparent authority will do." See also *United States v. Chaidez,* 919 F.2d 1193, 1201–1202 (7th Cir. 1990), certiorari denied *sub nom. Chavira v. United States,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). *Rodriguez* requires nothing more.

■ To assess whether apparent authority exists, "one must look for indicia of actual authority." *United States v. Miller,* 800 F.2d 129, 134 (7th Cir.1986). In *Rodriguez,* the police gained access to Rodriguez' apartment with the assistance of Gail Fischer, a woman who described the apartment as "our[s]", stated that she had clothing and furniture there, unlocked the door with her key, and granted the officers permission to enter. *Id.* 110 S.Ct. at 2797. Although the Court held that the state ultimately failed to establish Fischer's " 'joint access or control for most purposes' ", *id.* at 2798, it ruled that her representations nevertheless furnished an adequate basis for the police to believe she had authority to permit the search.

After ignoring *Rodriguez* altogether in their initial brief, the appellants quote liberally from the decision in the reply brief, but to no avail. Rosario and Estrada contend that compared to the police in *Rodriguez,* "the officers in the instant case had no information regarding Vilaro's authority to consent to the search of Defendant Estrada's room." Joint Reply Brief and Appendix for Defendants–Appellants, filed Dec. 26, 1991, at 6 (hereinafter "Reply Brief"). To the contrary, the police officers outside Room 315 obtained enough information during their brief encounter with Vilaro to make a reasoned judgment about his authority to admit them into the room.

Seconds after Herlache knocked on the door to Room 315, which the officers knew to be registered to a 46 year-old man named Estrada, the door opened and Vilaro appeared in the threshold. At this point, the officers had no reason to suspect that the room was occupied by more than one person, never before having encountered Vilaro, Estrada, or Rosario. When the police identified themselves, explained why they were there, and then asked if they could come into the room, Vilaro—without hesitation—gestured for the officers to enter. He may even have voiced his acquiescence before opening the door wider.

■ The record, in any event, reveals that Vilaro did not communicate with anyone else inside the room to ask whether he could invite the officers inside. Nothing about Vilaro's speech or mannerism suggested that he needed to obtain someone else's approval to permit the entrance of the officers. Nor did Rosario or Estrada approach the doorway, voice their objections to the proposed entry, or otherwise attempt to intercede in the exchange between Vilaro and the police. Their presence in Room 315, in fact, did not become apparent until the officers set foot into the room and discovered them seated at the table. By allowing Vilaro unfettered access to the door, the appellants also gave him discretion to decide whom to admit, thereby sacrificing some degree of their privacy. Since "[t]he underpinning of third-party consent is assumption of risk," one's expectation of privacy in such a situation "is not absolute, but contingent in large measure on the decisions of another." *Chaidez,* 919 F.2d at 1202. In short, nothing about the interaction between Vilaro and the officers at the door conceivably could have undermined a reasonable person's impression that Vilaro was vested with the power to allow whomever he pleased into Room 315.

As if a person's age were as obvious as the color of one's hair, the appellants make much of the fact that a man appearing to be in his twenties or thirties opened the door to Room 315 instead of a 46 year-old—much ado about nothing. This discrepancy, they claim, should have alerted the officers that the man who greeted them could not possibly have been Estrada, in whose name the room was registered. Since it was readily apparent to the police that Vilaro failed to match the description of Estrada, the argument proceeds, the officers could not reasonably have believed that the man in the doorway could give them license to

enter the room. The record does not even conclusively demonstrate that the officers in fact realized that the man who answered the door was not Estrada. Still, the argument is not persuasive.

■■■ While the police made no effort to determine the identity of the man in the doorway, their alleged realization that Estrada was not at the door is not dispositive on the issue of apparent authority. The question is not who comes to the door so much as it is whether whoever appears there projects an aura of authority upon which one can reasonably rely. Moreover, the Fourth Amendment makes no insistence that the decisions of government agents always be correct. *Rodriguez,* 110 S.Ct. at 2800. Police officers would be held to an impossibly high standard if expected to carry out their duties infallibly, and the courts have long recognized that mistakes will occur. "But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). As the Court put it in *Hill v. California,* 401 U.S. 797, 803–804, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971), "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."

■■■ That is not to say, of course, that it would be reasonable for law enforcement agents to believe in every instance that someone who invites them into a home or a room is authorized to do so. This circuit never has maintained that proposition. See, *e.g., United States v. Harris,* 534 F.2d 95 (7th Cir.1976). As the Court stated in *Rodriguez:* "Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Id.* 110 S.Ct. at 2801. This language suggests that in the absence of sufficient facts, officers have a duty to seek further information in order to determine whether they may reasonably infer that the inviter has the necessary authority to consent to an entry or search of the premises.

Despite the appellants' arguments to the contrary, the record indicates that the officers actually received ample information to conclude with reason that Vilaro possessed the authority to allow them into the room. No further inquiry was required of them because Vilaro acted at all times as though he were the keeper of the door to Room 315. Neither of the defendants endeavored to challenge such appearances. Since the police gained entry to the room "at the sufferance of someone entitled to admit them, the evidence they obtained is admissible against everyone." *Chaidez,* 919 F.2d at 1202.

B. Vilaro freely and voluntarily consented to the officers' entry into the motel room.

■■■ The government must prove by a preponderance of the evidence that someone who consents to a search does so freely and voluntarily. *Schneckloth v. Busta-monte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854; *United States v. Durades,* 929 F.2d 1160, 1163 (7th Cir. 1991). In determining whether consent arises from coercion and duress or from voluntariness, the court must consider the totality of the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047; *United States v. McGuire,* 957 F.2d 310, 314 (7th Cir.1992). Consent is not vitiated by the fact that the police do not inform a suspect of the right to refuse to permit a search, *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047, and this court will reverse the finding of the district court only if its decision is clearly erroneous. *Durades,* 929 F.2d at 1163.

■■■ Nothing in the record supports the appellants' contentions that the government failed to meet its burden of proof. Nor is there any merit to their claim that the district court misplaced the burden and misapplied the law. The appellants argue disingenuously that the record contains no testimony "other than the fact that a young man stepped back from four uniformed police officers." Joint Brief and

Appendix for Defendants–Appellants, filed Nov. 13, 1991, at 16. In reality, the record at several points demonstrates that Herlache knocked at the door and identified himself in English when Vilaro opened the door. He then mentioned why the police were at the Exel Inn and requested permission to enter Room 315, which Vilaro immediately granted.

Attempting to argue that Vilaro did not freely allow the entry, the appellants seize upon *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), a case whose fact pattern is nearly identical to this one. *Johnson* stands for the proposition that a warrantless entry of a dwelling to make an arrest or to conduct a search generally violates the Fourth Amendment, but appellants' reliance on it is misplaced. The significant difference which the appellants neglect to address is that in *Johnson* the police officers at the door of a hotel room never requested permission to enter from the occupant, whom they suspected of smoking opium. Unlike the turn of events here, the search in *Johnson* "was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." *Id.* at 13, 68 S.Ct. at 368.

### III. CONCLUSION

The government met its burden in proving that Vilaro had apparent authority to consent to the search and that he granted it freely and voluntarily. Because the district court's decision was not clearly erroneous, its judgment is affirmed.