61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark L. NEFF, Defendant-Appellant.
 No. 94-3004.
 United States Court of Appeals, Seventh Circuit.
 Argued June 14, 1995.
Decided July 18, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 28, 1995.
 
 Before COFFEY, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Appellant Mark L. Neff was convicted of being a felon in possession of a firearm, 18 U.S.C. Sec. 922(g)(1). Neff appeals the district court's denial of his motion to suppress the firearm. We affirm.
 
 I. Facts
 
 2
 In April 1991, Mark Neff ("Neff") escaped from a New York prison with another inmate. Neff stole a car in Pennsylvania and made his way to his brother's home in White Hall, Illinois. Neff arrived at his brother's place on April 24, 1991, where he intended to stay for several days. Neff's brother, Terry Neff ("Terry"), lived with his wife, Valerie Neff ("Valerie"), and their daughter Ashley. While there, Neff stayed in a common room in the middle of the house, which served as Ashley's bedroom,[1] the dining room, and part of the kitchen. Neff kept all his belongings in a paper grocery sack, which he left on top of the bed.
 
 
 3
 Shortly after arriving at his brother's, Neff abandoned the stolen car, although not before removing the stereo and speakers and placing them with his other belongings in the sack. The Illinois State Police, alerted to Neff's presence by the abandoned vehicle, took Neff into custody at his brother's home on April 25, 1991. At the time of arrest, the police performed a rapid search of the home for the other escaped inmate.
 
 
 4
 Later that day, State Trooper Meldrum ("Meldrum") attempted to speak with Neff regarding the missing car stereo. Neff initially refused to speak with Meldrum. In light of Neff's silence, Meldrum told Neff he would next interview Terry, who had been seen in the stolen car. Neff immediately told Meldrum that Terry had nothing to do with the matter, and that Neff had the stolen stereo in a sack with his other personal effects. Neff stated that Meldrum should call Terry, and Terry would bring in Neff's belongings and turn them over to Meldrum.
 
 
 5
 Meldrum immediately drove to Terry's house, but neither Terry nor Valerie were there. Shortly thereafter, Meldrum located Valerie at a nearby relative's home. Meldrum told Valerie that Neff told him to retrieve Neff's belongings from her home. Valerie and Meldrum went to the house, where Valerie let Meldrum in, guided him to the common room, and pointed out Neff's sack of belongings. Both saw a car stereo protruding from the top of the sack. Both walked to the sack, and Meldrum removed the stereo to ascertain whether it was from the stolen vehicle.[2] The sack fell over on its side, and a .22 caliber revolver with an obliterated serial number fell out.
 
 
 6
 Neff was convicted under 18 U.S.C. Sec. 922(g)(l) before Judge Richard Mills, and sentenced as an Armed Career Offender, pursuant to 18 U.S.C. Sec. 924(e). This conviction was reversed on appeal, on the grounds of an improper communication between Judge Mills and the jury. See United States v. Neff, 10 F.3d 1321 (7th Cir.1993).
 
 
 7
 Before his second trial, this time before Judge Mihm, Neff moved to suppress the gun evidence. The district court denied the motion; the jury convicted him under 18 U.S.C. Sec. 922(g)(1), and again the judge sentenced him as an Armed Career Offender. The only issue on appeal is the denial of Neff's motion to suppress the gun.[3] The district court concluded that Neff did not consent to a search, but that Valerie did consent. The district court further concluded that once Meldrum was legally in the house, he properly seized the gun in plain view when the sack accidentally tipped over.
 
 
 8
 Neff maintains that he did not consent to a search of his property, and that he had a reasonable expectation of privacy in his possessions at his brother's home. Neff further argues that Valerie did not validly consent to a search of her home, in that she only allowed Meldrum access when he threatened to turn her daughter over to the Department of Children and Family Services ("DCFS"). Neff further argues that Valerie had no authority to turn his property over to the police. Neff maintains Meldrum should have obtained a search warrant or asked Terry for the property as instructed.
 
 
 9
 The government concedes that Neff did not consent to the search. However, the government argues that Valerie consented to Meldrum entering her home, and that Meldrum saw the stereo in plain view. The government further contends that when the grocery sack was jostled, the gun fell into plain view, at which time Meldrum legally seized it.
 
 II. Analysis
 
 10
 This court reviews the denial of a motion to suppress evidence for clear error. United States v. James, 40 F.3d 850, 874 (7th Cir.1994), cert. denied 115 S.Ct. 948 (1995). A decision is clearly erroneous only if "we are 'left with a definite and firm conviction that a mistake has been made.' " Id. (quoting United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir.1994)). Given the fact-specific nature of a motion to suppress, the district court judge, who had the opportunity to hear the testimony and observe the witnesses, is entitled to special deference. Id.
 
 
 11
 Absent a relevant exception, the Fourth Amendment generally prohibits the warrantless entry of a person's home to make an arrest or conduct a search. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); United States v. Robles, 37 F.3d 1260, 1263 (7th Cir.1994). Further, the protections of the Fourth Amendment attach to an overnight guest in his host's home. Minnesota v. Olson, 495 U.S. 91, 96-7 (1990).
 
 A. Valerie's Consent to Enter the Home
 
 12
 A warrantless search conducted pursuant to a valid consent is permissible under the Fourth Amendment. United States v. Price, 54 F.3d 342, 345 (7th Cir.1995) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). Consent is valid only if freely and voluntarily given. United States v. Duran, 957 F.2d 499, 502 (7th Cir.1992) (consent is invalid if procured by duress and coercion). The voluntariness of the consent is ascertained in the totality of the circumstances, with the government bearing the burden of proving voluntariness by a preponderance of the evidence. Id.
 
 
 13
 The consent of any joint occupant of a residence to a search is valid against any other joint occupant of the residence. United States v. Matlock, 415 U.S. 164, 169-71 (1974); Robles, 37 F.3d at 1265. The person providing the consent must have authority to do so by having joint access or control of the property. Duran, 957 F.2d at 503. See also United States v. Rosario, 962 F.2d 733, 736 (7th Cir.1992) (consenter must possess common authority or joint control over premises). By sharing a dwelling with others, the nonconsenting party assumes the risk that the co-occupant may allow others access to the dwelling. United States v. Chaidez, 919 F.2d 1193, 1201-02 (7th Cir.1990), cert. denied, 501 U.S. 1234 (1991); Rosario, 962 F.2d at 737. This shared control brings with it a diminished expectation of privacy. Id.
 
 
 14
 There is no real dispute that Valerie had authority to allow Meldrum to search her home, including the room utilized by Neff. This court has left open the possibility that, even between spouses, there may be areas of privacy in a common home where one occupant would not have authority to consent to a search. See Duran, 957 F.2d at 504-05. No such argument can be made here. The room Neff stayed in was a common room in the middle of the house which served multiple purposes, including bedroom, kitchen, and dining room. While only Neff utilized the bed during his stay, Valerie, Terry, and their daughter were not excluded from the room (nor were visitors). (Suppression Hearing Transcript[4] at 5-7, 24, 29, 54, 62; Trial Transcript at 68-69.)
 
 
 15
 Valerie's testimony indicates her consent was voluntary. She testified that Meldrum was friendly (H.T. at 9), and that she was aware that he could not search the house without a warrant absent her consent. (H.T. at 18.) She testified that when told by Meldrum he wished to pick up Neff's property, she responded "Well, we'll just go down there and get it." (H.T. at 8.) She then let Meldrum into her home, led him to the common room, and pointed out the sack on the bed. This type of cooperative behavior can indicate consent. See generally James, 40 F.3d at 873-75.
 
 
 16
 The only evidence of coercion was Valerie's testimony regarding a threat to turn her daughter over to the DCFS. (H.T. at 18-19.) The district court concluded her testimony was not credible, as the claim had not been made previously, despite numerous opportunities. (H.T. 88-89.) Further, Valerie's testimony did not indicate the alleged threat was the reason she permitted Meldrum in her home. (H.T. at 26.) The district court's assessment of voluntariness is supported by the record and not clearly erroneous.
 
 B. Turning Over Neff's Property
 
 17
 Valerie's valid consent to search the house, however, does not end the inquiry. Authority to consent to a search of the room does not necessarily include authority to consent to a search of closed containers within the room. United States v. Rodriguez, 888 F.2d 519, 523-24 (7th Cir.1989). Consent can only be given by someone with sufficient authority with respect to the container, such as someone who has joint access. United States v. Salinas-Cano, 959 F.2d 861, 863 (10th Cir.1992). See also United States v. Welch, 4 F.3d 761, 764 (9th Cir.1993). See generally Frazier v. Cupp, 394 U.S. 731, 740 (1969) (duffel sack jointly used by two people and left in consenting party's home may be searched based on one party's consent).
 
 
 18
 The uncontradicted testimony is that before Meldrum arrived with Valerie no one touched Neff's grocery sack but Neff, although he never instructed his family that the sack and its contents were off limits. (H.T. at 15-16, 61-62.) However, while in the home Neff freely went into the sack in the presence of the other occupants and visitors. (T.T. at 34-36, 69-70.) Further, unlike the cases upon which Neff relies, Neff's possessions were not hidden from view in a closed container.
 
 
 19
 The courts have recognized the heightened expectation of privacy inherent in the use of a closed container, given the owner's obvious intent to keep the contents secret. Salinas-Cano, 959 F.2d at 864. Cf. Florida v. Jimeno, 500 U.S. 248, 251-52 (1991). No such expectation of privacy typically exists with open containers, such as open boxes, whose contents are readily ascertained. Salinas-Cano, 959 F.2d at 864; United States v. Sealey, 830 F.2d 1028, 1031 (9th Cir.1987). See also Rodriguez, 888 F.2d at 523 (opening a "closed" container requires additional justification). Cf. Jimeno, 500 U.S. at 251-52.
 
 
 20
 The stereo was on top of the other belongings in the sack and clearly visible. Valerie, Terry, and Meldrum all quickly saw the stereo upon entering the room. (H.T. at 10, 36-37; T.T. at 37-38.) While an individual might have an expectation of privacy regarding objects in a sealed container, no such expectation extends to objects on top of the container in plain view. Neff assumed the risk that anyone entering the house with the consent of his hosts would see his possessions.
 
 
 21
 Meldrum could properly seize the stereo. A police officer that is lawfully in a home can seize items in "plain view" without running afoul of the Fourth Amendment, if the incriminating character of the article (as contraband or evidence of a crime) is immediately apparent. Soldal v. Cook County Illinois, 113 S.Ct. 538, 545-46 (1992). Meldrum knew the stereo had been stolen, and he had been directed to it by Neff himself. While in the process of legally seizing the stereo, the gun came into plain view, largely through happenstance, as Meldrum or Valerie jostled the sack. Meldrum was aware of Neff's status as a felon, thus Meldrum was also aware the gun was clearly evidence of a crime. Meldrum's seizure of the weapon was appropriate under plain view.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The common room contained Ashley's bed, the family dining table, and the refrigerator. During Neff's stay Ashley slept in her parents' room
 
 
 [2]
 It is unclear whether Valerie or Meldrum touched the stereo first. Both may have reached for the stereo and made contact with the sack
 
 
 [3]
 Neff apparently contemplated arguing that his New York State attempted burglary conviction was not a crime of violence for sentencing purposes. Neff presented no argument in his opening brief germane to this issue, and he has waived it. See Bobo v. Kolb, 969 F.2d 391, 400 (7th Cir.1992). Neff's motion to amend his brief to add this argument was denied by this court on December 21, 1994
 
 
 [4]
 Hereinafter excerpts from the Suppression Hearing Transcript are designated "H.T." and excerpts from the Trial Transcript are designated "T.T."