UNITED STATES of America,

v.

Micah CLARK.

Criminal No. 02–415.

United States District Court,
D. New Jersey.

Dec. 17, 2002.

Frederick W. Klepp, Cherry Hill, NJ, for Defendant, Micah Clark.

Christopher J. Christie, United States Attorney, Jacqueline Carle, Assistant United States Attorney, Camden, NJ, for the United States of America.

OPINION

ORLOFSKY, District Judge.

This case calls to mind a well-known adage: "We are known by the company we keep." A corollary to this adage might be that we should *know* the company we keep, because we are sometimes bound by the actions of those with whom we associate. Here, the Defendant, Micah Clark [1] ("Clark"), moves to suppress evidence that the Federal Bureau of Investigation

1. Defendant identifies himself as Mich. ah Steven Clark. (*See, e.g.,* Oct. 13, 2002 letter from Def. to Court.)

("FBI") seized from two Philadelphia hotel rooms, Extended Stay America, Room 418, located at 9000 Tinicum Boulevard, and Embassy Suites, Room 213, located at 9000 Bartram Avenue. These rooms were registered in Clark's name. The question presented is whether the Fourth Amendment's exclusionary rule applies to the fruits of these searches. The answer to this question hinges on whether the "company" Clark kept, the parties who executed the consent forms to search these rooms, had the authority to do so.

For the reasons that follow, I find that the searches of Extended Stay America, Room 418, and Embassy Suites, Room 213, did not violate the Fourth Amendment. Therefore, Clark's motion to suppress the evidence seized from these rooms shall be denied.

## I. FACTS AND PROCEDURAL HISTORY [2]

### A. Armed Robbery of Commerce Bank

Clark was indicted for the June 11, 2000 armed robbery of $308,815.32 from Commerce Bank, N.A., in Cherry Hill, New Jersey, in violation of 18 U.S.C. §§ 2113(a) and 2. At the time of the bank robbery, a witness in a townhouse across the street from the bank observed someone walking and struggling with a large duffle bag get into a car, described as a dark four door sedan with the license plate number CEL–3603. *See* Tr. of 12/6/02 Hr'g ("Tr."), 13:21 to 14:2, Test. of Special Agent Mark Gillen.

The Cherry Hill police and the FBI issued a press release seeking public assistance and information about the robbery.

*See* Aff. of Mark Gillen, 6/12/00, ¶ 7 (attached to Aff. of Howard B. Shapiro [3], 6/20/02, Ex. B). Based on an anonymous caller's tip, the investigators learned that some of the parties allegedly involved in the robbery were staying at two hotels in Philadelphia, the Extended Stay Hotel and the Studio Plus Hotel. *See* Tr. 12:21–25. In addition to a gold Cadillac Escalade identified in connection with the robbery, the anonymous caller also identified a brown Cadillac with Pennsylvania license plate number CDL–3603, the same number previously identified by the witness near the scene of the robbery. *See* Tr. 12:25 to 13:11.

### B. Search of Studio Plus Hotel Room 330

The FBI located the vehicle with the CDL–3603 tag, a brown Lincoln Town Car, parked in front of the Studio Plus Hotel. Tr. 14:5–7. Studio Plus management informed the FBI that two black males associated with the vehicle, Micah Clark and Mark Henderson, had checked out of Room 330. Tr. 14:13–17. They were accompanied by a white female with bleached-blond hair. Tr. 31:17–19. The trio left the hotel in two other automobiles, a gold-colored Cadillac Escalade and a burgundy Ford Expedition. Tr. 21:1–4. A search of Studio Plus Room 330 yielded a money wrapper stamped "Commerce Bank" in the wastepaper basket. Tr. 14:24–25.

### C. Search of Extended Stay America Room 418

After their search at the Studio Plus Hotel, the FBI continued their investiga-

---

**2.** This Court conducted an evidentiary hearing on December 6, 2002, during which FBI Special Agent Mark Gillen provided testimony about the Commerce Bank robbery investigation. I find Agent Gillen's testimony to be credible and persuasive, and the recitation of

facts which follows draws significantly from his testimony.

**3.** Defendant Clark is now represented by Frederick W. Klepp, Esq., who was appointed pursuant to this Court's Order of June 28, 2002.

tion nearby at the other hotel identified by the anonymous caller, the Extended Stay America. *See* Tr. 15:2–4. The investigators learned from Extended Stay management that Micah Clark was a registered guest in Room 418, *see* Tr. 15:4–5, 37:18–23, and tried, unsuccessfully, to contact the individuals in Room 418, *see* Tr. 15:6–19.

The FBI had been maintaining surveillance over the brown Lincoln Town Car with the CDL–3603 tag in the Studio Plus parking lot. *See* Tr. 15:21–23. At approximately 11:30 p.m., a male later identified as Mohammed Jah approached and attempted to enter the vehicle. Tr. 15:24–25. When stopped and questioned by the FBI, Jah explained to them that he had obtained permission to use the vehicle from its owner, "Dink." Tr. 16:1–3. Jah volunteered that he was staying in Room 418 of Extended Stay America with Micah Clark and "Dink," and that all three men had also been in Room 330 of the Studio Plus Hotel. Tr. 16:6–11; 27:11–21; 30:23–25. Jah also confirmed that the rooms were registered in Clark's name. Tr. 33:18–24.

Jah said that had been "in and out" of Room 418 throughout the day, and that he had just woken up within the past hour or two "to party with some girl" at the Studio Plus Hotel. Tr. 16:12–17; 34:10–25. Jah further explained that he had a key to Extended Stay America Room 418, where he had been staying for several days, but left the key behind when he went to Studio Plus to "party." Tr. 16:18–24.

After questioning Jah, the FBI presented Jah with a Consent to Search form. Tr. 17:20–21; 18:12–21. This form, executed by Jah, provides:

1. I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of: Room 418 at the Extended Stay America Hotel on Bartram Ave in Philadelphia, PA.

2. I have been advised of my right to refuse consent.

3. I give this permission voluntarily.

4. I authorize these agents to take any items which they determine may be related to their investigation.

Gov't Ex. G–1; Tr. 19:4–19. During this search of Room 418, the FBI recovered, *inter alia:* a loaded black Witness–PS–9 millimeter pistol with an obliterated serial number; a Brinks home security safe containing a box of .45 caliber ammunition, a Smith & Wesson magazine loaded with .45 caliber ammunition, and a laser sight for a handgun; a notebook containing diagrams of and operational information about the Commerce Bank; two pairs of black gloves; two pairs of brown gloves; one black nylon hood with strings; two sheer nylons; one set of Ford car keys; non-government identification for Quinzell Champagne; and correspondence addressed to Thaddeus Pitts and Mohammed Jah. *See* Gov't Ex. 1–A; Tr. 19:23 to 20:20.

### D. Search of Embassy Suites Hotel Room 213

The burgundy Ford Expedition automobile that Studio Plus management had identified was found parked in front of another nearby hotel, the Embassy Suites Hotel. Tr. 21:4–6. A hotel clerk confirmed that a person by the name of Micah Clark had registered in Room 213 the previous afternoon. Tr. 21:7–10. The FBI made a "pretext" call to Room 213, and someone answered the phone, but no one answered the door. Tr. 21:15–16; Shapiro Aff., Ex. B, ¶ 16. After having found .45 caliber ammunition in Studio Plus Room 330, the FBI agents proceeded to enter Embassy Suites Room 213 "because [they] were missing a .45 caliber handgun," Tr. 21:25 to 22:1.

In Room 213, the FBI encountered two males, Quinzel "Dink" Champagne and Thaddeus "Meems" Pitts, and a female, Sharifah Hall. Tr. 22:2–5. Hall was found unclothed, in bed with Pitts. Tr. 22:14–19. Later, Hall explained that she had just spent the afternoon with Pitts and Champagne, whom she had met through Micah Clark, Tr. 22:20 to 23:2, and that she was spending the night with Pitts, Tr. 40:10–16. She also confirmed that she had been with Micah Clark in Studio Plus Room 330. Tr. 49:25 to 50:3. Clark was not present in Embassy Suites Room 213, Tr. 23:3–4, 18–19, but Hall, Pitts and Champagne accessed Room 213 with their own key. Tr. 23:11–12.

Like Jah, Hall signed a Consent to Search form for "Room 213, Embassy Suites, Bartram Ave, Philadelphia, PA." Gov't's Ex. 2; Tr. 24:14 to 25:11. At the time Hall was asked to execute this consent, Pitts and Champagne were already under arrest. Tr. 42:8–13. The FBI agents believed that they had obtained a valid consent from Hall and, as with Extended Stay America Room 418, did not obtain a search warrant from a Magistrate Judge prior to searching Embassy Suites Room 213. Tr. 58:2–9. During the search of Room 213, the FBI recovered approximately $179,000 in cash banded with "Commerce Bank" money wrappers. See Gov't's Ex. 2–A.

Subsequent to his arrest, Champagne confessed to his involvement in the Commerce Bank robbery and confirmed that Clark and Jah both received proceeds from the robbery, $30,000 and $50,000, respectively, for participating in the planning and serving as lookouts during the robbery. See Aff. of Mark S. Gillen, 1/16/02 (attached as Ex. A to Shapiro Aff.), ¶¶ 5,8.

## II. DISCUSSION

### A. THE GOVERNING FOURTH AMENDMENT STANDARD AND THE EXCLUSIONARY RULE

Clark seeks to suppress the evidence retrieved as a result of the consent searches of Room 418 at the Extended Stay America Hotel and Room 213 at the Embassy Suites.[4] These rooms were registered in Clark's name and paid for by Clark as well. See Shapiro Aff., Exs. F, G; Def.'s Supplemental Letter Br. 6/20/02 ("Def.'s Supp'l Ltr. Br."), at 2.

The Fourth Amendment guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ... and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (West 2002). Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). This prohibition also applies "to the fruits of the illegally seized evidence." *Id.* The rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* at 348, 94 S.Ct. 613; *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Searches conducted without a warrant are *per se* illegal, even where the police

---

4. Clark has also made several discovery motions, which were addressed by this Court during the evidentiary hearing on Dec. 6, 2002, and in an Order dated Dec. 17, 2002.

have probable cause to suspect criminal activity, unless the circumstances fall into one of a few specifically established and well-delineated exceptions to the warrant requirement. *See Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Katz v. United States*, 389 U.S. 347, 356–57, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions is consent: "[T]he search of property without warrant and without probable cause, but with *proper consent voluntarily given,* is valid under the Fourth Amendment." *United States v. Matlock*, 415 U.S. 164, 165–66, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (emphasis added) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *see also United States v. Morales*, 861 F.2d 396, 399 (3d Cir.1988). It is the Government's burden to establish that an exception to the warrant requirement applies. *See United States v. Chun Yen Chiu*, 857 F.Supp. 353, 360 (D.N.J.1993) (citing *United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir.1992)).

## B. CLARK'S STANDING TO CHALLENGE THE HOTEL ROOM SEARCHES

Standing to claim the protection of the Fourth Amendment depends on whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place. *See Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (citations omitted). Fourth Amendment protections generally apply to persons staying in hotel and motel rooms. *See Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and sei-

zures."); *United States v. Conner*, 948 F.Supp. 821, 830–31 (N.D.Iowa 1996) (collecting cases).

The defense has presented room receipts for both Extended Stay America Room 418 and Embassy Suites Room 213 that identify "Michah Clark" as the registered guest. *See* Shapiro Aff., Exs. F, G. During the evidentiary hearing, the Government objected to Clark's standing to raise a Fourth Amendment objection, *see* Tr. 9:5–7, because one of the pieces of evidence retrieved from a search of the Cadillac Escalade was a photo identification containing Thaddeus Pitts' picture, but Micah Clark's name on it. Tr. 8:14–16. The Embassy Suites hotel kept a photocopy of Clark's driver's license on file, but the photograph on the document is dark and unclear, so it cannot be determined whether Pitts' or Clark's picture is on the license. *See* Tr. 8:13–18; Shapiro Aff., Ex. G.

According to Assistant United States Attorney ("AUSA") Carle, the investigation of the bank robbery revealed that Jah and others understood the rooms were to be rented by Pitts, using Clark's identification. Tr. 10:16–20.[5] This argument suggests that Clark had no reasonable expectation of privacy, and consequently, no Fourth Amendment standing, in the two rooms because they were not actually rented by Clark. *See Rakas v. Illinois*, 439 U.S. 128, 141–43, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (no legitimacy to defendant's expectations of privacy where the area searched is in the control of a third party).

I conclude, however, that Clark has standing to challenge the evidence seized under the Fourth Amendment because he

---

**5.** AUSA Carle argues that Clark might change his argument after the suppression motion and say it was actually Thaddeus Pitts who rented the rooms and used Micah Clark's

identification. Tr. 8: 19–24. While this defense strategy might well be "intellectually dishonest," *id.,* at the present time only the standing issue is before the Court.

was the registered guest in Rooms 418 and 213. As Mr. Klepp pointed out at oral argument, "on paper, as far as the hotel is concerned, as far as anyone else reviewing discovery would be concerned, Micah Clark is the person who ... has control of the rooms." Tr. 9:22 to 10:2. The photo identification that Embassy Suites kept on file clearly contains Clark's name and address, and the photograph is too unclear to determine whether it is someone else's photograph. *See* Shapiro Aff., Ex. G. Based on this record, I hold that Clark, as the registered Guest in Extended Stay America Room 418 and Embassy Suites Room 213, has standing to move to suppress the evidence seized from these hotel rooms.

## C. VALIDITY AND VOLUNTARINESS OF THE CONSENTS TO SEARCH

Two issues control the application of the exclusionary rule: (1) whether the parties who signed the consents to search, Sharifah Hall and Mohammed Jah, respectively, had actual or apparent authority to consent to the searches, *see United States v. Rosario,* 962 F.2d 733, 737 (7th Cir.1992); and (2) whether the consents to search constituted valid, voluntary consents to search the hotel rooms, *see Schneckloth,* 412 U.S. at 248, 93 S.Ct. 2041. Here, the defense has not objected to the voluntariness of Jah's and Hall's consents, so I shall only address the actual or apparent authority issue.

The government bears the burden of proving by a preponderance of the evidence that the consenting party possessed authority to grant his or her consent. *See Rosario,* 962 F.2d at 736. Additionally, the United States Supreme Court has articulated an objective standard for analyzing the constitutionality of a consent to search. *Illinois v. Rodriguez,* 497 U.S.

177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). If a "man of reasonable caution in the belief" would believe that the consenting party had authority over the premises searched, the search is valid. *Id.* 188–89, 110 S.Ct. 2793. Thus, even if the search were later determined to be unlawful, the consent to search is still valid if deemed reasonable at the time the consent was executed.

### 1. Extended Stay America Room 418

█ "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock,* 415 U.S. at 170, 94 S.Ct. 988; *see also United States v. Smith,* 714 F.Supp. 1393, 1402 (N.D.Tex.1989). The existence of common authority rests on "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection ... and the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock,* 415 U.S. at 172 n. 7, 94 S.Ct. 988.

Mohammed Jah explained to the FBI agents who interrogated him that he had a key to Room 418, which was registered in Clark's name. *See* Tr. 16:18–24; 33:18–24. Jah's possession of a key to the room is a clear indication of authority over the premises. *See Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Jah also indicated that he freely traveled throughout the day between the rooms at Studio Plus and Extended Stay America, *see* Tr. 16:6–17, which is another indication of his authority over those rooms.

Additionally, Jah said that he had been "in and out" of Room 418 throughout the day, and that he had just woken up within the past hour or two. *See* Tr. 16:12–17;

34:10–25. Courts often take into account whether one is an overnight guest in determining whether that person has a privacy interest in the premises searched. *See Minnesota v. Olson,* 495 U.S. at 96–97, 110 S.Ct. 1684. "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter,* 525 U.S. at 90, 119 S.Ct. 469 (citation omitted). Like an overnight guest in a home, one who sleeps in a hotel room enjoys "a temporary private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable." *Minnesota v. Olson,* 495 U.S. at 99, 110 S.Ct. 1684 (citation omitted). Here, not only did Clark have a reasonable expectation of privacy in the searched hotel room, but so did Jah, his overnight guest, who signed the Consent to Search form.

Thus, I conclude that Jah had the authority to consent to the search of Room 418, and that Clark is bound by Jah's consent to the search. The concept of "third party consent" is based on the premise that the joint possessor has assumed the risk that the other may allow an outside party to search the premises. *See Smith,* 714 F.Supp. at 1402. Here, Clark assumed such a risk by allowing Jah to have uncontrolled access to Room 418, which was registered in Clark's name. Moreover, under the standard announced in *Illinois v. Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. 2793, Jah's statement provided the FBI agents a reasonable basis for their belief that he had authority to consent to the search of Extended Stay America Room 418.

**2. Embassy Suites Room 213**

■ Like Jah, Sharifah Hall was an overnight guest in Room 213 and signed the FBI's Consent to Search form. As ex-plained earlier, the fact that Hall was an overnight guest in Room 213 is a significant consideration because as an overnight guest, Hall enjoyed a reasonable expectation of privacy protected by the Fourth Amendment. *See Minnesota v. Olson,* 495 U.S. at 99, 110 S.Ct. 1684. Like Jah, Hall waived this privacy interest. Also like Jah, Hall said that she accessed Room 213 with a room key, which is another indication of her authority over the room. *See* Tr. 23:11–12. Again, under *Illinois v. Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. 2793, the FBI agents had a reasonable belief that Hall, who they found naked at night in Embassy Suites Room 213, possessed the authority to consent to a search of the room.

To summarize, the Government's position that the searches of Extended Stay America Room 418 and Embassy Suites Room 213 were based on voluntary consent is supported by a preponderance of the evidence. Jah's statement that he possessed a key to Room 418 and that he had recently woken up provides a reasonable basis for the conclusion that he had the authority to consent to the search of Room 418. Likewise, Hall's consent to the FBI's search of Room 213 was reasonable in light of her statement that she was an overnight guest in the room, which she, Pitts and Champagne had entered with a key.

**III. CONCLUSION**

For the reasons set forth above, Defendant Micah Clark's motion to suppress evidence seized from Extended Stay America Room 418 and Embassy Suites Room 213 shall be denied. The Court shall enter an appropriate form of order.

**ORDER**

This matter having come before the Court on the Motion of Defendant, Micah Clark, to Suppress Evidence, pursuant to

U.S. Const. amend. IV, Frederick W. Klepp, Esq., appearing on behalf of the Defendant, and Christopher J. Christie, Esq., United States Attorney, and Jacqueline Carle, Esq., Assistant United States Attorney, appearing on behalf of the United States of America; and,

The Court having considered the submissions of the parties, the evidence presented at the evidentiary hearing conducted on December 6, 2002, as well as the oral argument of counsel;

For the reasons set forth in the Opinion entered concurrently with this Order, IT IS, on this 17th day of December, 2002, hereby ORDERED that:

1. Defendant's motion to suppress evidence seized as the result of the search of Extended Stay America Room 418 is DENIED; and,

2. Defendant's motion to suppress evidence seized as the result of the search of Embassy Suites 213 is DENIED.