**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eddie L. JACKSON, and Natasha A. Williams, Defendants– Appellants.**

**Nos. 01–4362, 02–1030.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 2002.

Decided Dec. 30, 2002.

Before POSNER, COFFEY, and MANION, Circuit Judges.

### ORDER

These consolidated criminal appeals arise from the district court's denial of the defendants' motions to suppress evidence seized during a search of their motel room.

Eddie Jackson and Natasha Williams entered conditional guilty pleas with the right to appeal the denial of their motions to suppress. We agree with the court's denial of the motions to suppress and affirm.

In November 2000 Jackson and Williams were charged with possessing 50 grams or more of crack with intent to distribute, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A). In January 2001 the defendants filed separate motions to suppress the evidence seized by police from their motel room during a warrantless search on October 31, 2000. Jackson and Williams claimed that they did not consent to the search. The district court held a consolidated suppression hearing and ruled on the defendants-appellants' motions and denied the same.

At the suppression hearing Williams testified that she and Jackson were staying at the Motel 6 in East Peoria, Illinois, in a room registered to Williams. Williams conceded that she voluntarily allowed Detective Chris Hutt and Officer Craig Carlson to enter the room when they knocked on the door, and testified that when Hutt asked for permission to look around she told him he did not need to look around. According to Williams, she asked Hutt what he was looking for, and he replied that he thought there were illegal drugs in the room. Williams stated that Officer Carlson then took her and ultimately Jackson out into the hallway while Hutt began to search the room. Williams denied that she ever gave the officers permission to search the room.

Jackson did not testify at the suppression hearing. His attorney asserted, and the government did not dispute, that Jackson had a reasonable expectation of privacy in the motel room. However Jackson did concede that the police had no obligation to separately obtain his consent so long as his roommate Williams had consented.

Detective Hutt testified that on the day of the search the motel manager noticed Williams had a black eye and called police, partly out of concern for Williams and partly out of suspicion that she was involved in prostitution. Hutt and Officer Carlson responded to the call, and when they reached the motel they knocked on the door to Williams' room. Williams asked who was at the door, and when Hutt said the police, she responded, "Wait a minute." According to Hutt, while waiting he heard the shower turn on and the toilet flush, and when Williams answered the door, he asked if he and Carlson could come inside to talk. Williams responded, "Sure."

Once inside, Hutt asked Williams who was in the shower and was told "a friend." Hutt testified that he and Carlson saw a large amount of currency in plain view that Williams said she received from her mother. At that point, according to Hutt, the officers observed Jackson open the bathroom door, and at this time asked him to put on his clothes and come out of the bathroom. Hutt explained to Williams why they were there, and when Jackson came out of the bathroom, Hutt asked both for identification and via radio inquired whether either was wanted on any outstanding warrant.

Hutt testified that he then asked Williams whether there were drugs in the room and was told, "No, there are no drugs in the room." According to Hutt, he asked Williams for permission to "look around the room" and was asked to explain why; when Hutt answered that he thought there were drugs in the room and wanted to allay his suspicion, Williams gave him the "okay" to look around the room but at the same time insisted he would find nothing. Hutt directed Carlson to take Jackson outside and thereafter proceeded to count the money. Carlson

left Jackson in the hall, returned to the motel room, and went into the bathroom. There in the toilet tank he discovered the crack cocaine. Williams was arrested. By now Jackson had fled, but was apprehended and arrested later on.

Officer Carlson also testified at the hearing and corroborated Hutt's testimony. Carlson testified that Hutt told Williams that he suspected there were illegal drugs in the room. Carlson also stated that Hutt asked Williams if he could look around the room, to which Williams answered "yes."

In denying the motions to suppress, the district court found that "there was no doubt" that Hutt had asked Williams, "Do you mind if we take a look around?" and that Williams was well aware that the officers wanted to search the motel room. The district court further found that the officers were more credible than Williams and that Williams had in fact answered "yes" or "okay" in response to their request to look around the room. After further briefing, the district court ruled that the opening of the toilet tank was within the scope of Williams's consent.

The defendants contest the nature and scope of the consent given by Williams to the officers. The protection of the Fourth Amendment extends to occupants of a motel room. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Although a warrant and probable cause are generally required for law enforcement officers to search a motel room, an occupant's consent to a search is a recognized exception. *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir.2000). We review factual findings made by the district court during the suppression hearing for clear error. *Id.* at 833–34.

■ To conduct a search without a warrant, law enforcement officers must gain consent from the individual whose property is to be searched, or by someone who has common or joint authority over the premises. *United States v. Rosario*, 962 F.2d 733, 736 (7th Cir.1992). Hutt and Carlson knew that the hotel room was registered to Williams, and they confirmed that it was Williams who answered the door before asking her for consent to search. Therefore, Williams had the authority to authorize the officers to search the motel room. *See id.* at 736–37.

■ The district court credited the officers' testimony over that of the defendant Williams. The district court found that "there was no doubt" that Hutt asked Williams, "Do you mind if we take a look around?" and that Williams knew that the officers wanted to search the motel room. The district court also found that Williams responded "yes" or "okay" to Hutt's question. Thus, Williams consented to allow Hutt to "look around" the motel room. We have repeatedly held that a person's failure to object to an ongoing search undermines a later challenge that the search was conducted without consent. *United States v. Saadeh*, 61 F.3d 510, 518–19 (7th Cir.1995). Jackson was present in the hotel room at the time Williams consented to the search and never objected to that consent.

■ Williams and Jackson also claim that any consent Williams gave to the officers to "look around" only authorized the police to look for evidence in plain sight. We have in prior cases upheld searches in which the officers have used these words and/or other similar language in asking for consent. *United States v. Strache*, 202 F.3d 980, 985 (7th Cir.2000) (officers asked to "take a look" inside the room); *United States v. Rice*, 995 F.2d 719, 720 (7th Cir. 1993) (officers asked to "look around"); *United States v. Berke*, 930 F.2d 1219, 1222 n. 7 (7th Cir.1991) (officers asked to "look" in a home); *United States v. Montilla*, 928 F.2d 583, 587 (7th Cir.1991) (officers asked to take a "quick look"). Thus,

Williams and Jackson's argument that "look around" authorized only a plain-view search is not consistent with this court's jurisprudence.

Once consent to search has been given, that consent extends to the areas in which the identified object of the search could be found. *Saadeh,* 61 F.3d at 518. We have held that separate consent is not required for each entry or opening necessary to complete the scope of the search. *Id.* Next the defendants challenge the district court's finding that the scope of Williams' consent extended to the officers' search of the toilet tank. The scope of a consent to search is generally determined by what the officers are searching for. *Saadeh,* 61 F.3d at 518; *United States v. Maldonado,* 38 F.3d 936, 940 (7th Cir.1994). The scope of consent to search is determined by how a reasonable person would have understood the conversation between the law enforcement officer and the suspect. *Saadeh,* 61 F.3d at 518. Defining the parameters of a consensual search is done by examining the totality of the circumstances, a factual determination. *United States v. Hardin,* 710 F.2d 1231, 1236 (7th Cir.1983). The district court found that the officers identified the object of their search to Williams. Detective Hutt twice told Williams that he suspected he would find drugs in the room and wanted to investigate his suspicion. Thus, the district court was reasonable in determining that the expressed scope of the officers' search was for drugs and that Williams was aware of what the officers were looking for when she gave her consent.

In a search for drugs in a motel room, the toilet tank is an area in which drugs might be found and the police were not required to gain specific consent from Williams to either enter the bathroom or open the toilet tank. It is the burden of the person who gave the consent to limit that consent. *United States v. Patterson,* 97 F.3d 192, 195 (7th Cir.1996). Williams never limited her consent when Carlson entered the bathroom to continue his search or as he began to remove the toilet lid. If an individual does not withdraw his consent before an illegal substance is discovered, the consent remains valid and the seized item is admissible. *United States v. Mitchell,* 82 F.3d 146, 151 (7th Cir.1996). Williams and Jackson have never argued that Williams limited or withdrew her consent at any time after giving consent to Hutt. Thus Carlson's search of the toilet tank was within the scope of the valid consent.

Therefore, the district court was entitled to credit the officers' testimony over that of the defendants, and the district court did not clearly err in determining that Williams consented to the search. Because Williams' consent was valid, never withdrawn, and the scope of her consent included the bathroom and the toilet tank, we affirm the district court.